UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA


SCOTT LYNN DILLARD,                    CIVIL NO. 17-4802 (JNE/DTS)

      Petitioner,

v.                                     ORDER and
                                       REPORT AND RECOMMENDATION
T.J. WATSON,
*Warden*,

      Respondent.


---

Scott Lynn Dillard, #18306040-J, FCI-Sandstone, P.O. Box 1000, Sandstone, MN 55072, *pro se* Petitioner.

Ana Voss, Ann Bildtsen, and Erin Secord, Assistant U.S. Attorneys, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415, for Respondent.

---

## INTRODUCTION

Scott Lynn Dillard challenges the loss of good conduct time resulting from U.S. Bureau of Prisons ("BOP") disciplinary proceedings regarding a letter he wrote which the BOP determined was an attempt to introduce contraband (smokeless tobacco) into the prison. Dillard alleges the BOP violated his due process rights and moves to subpoena video and audio recordings related to the proceedings. The Court concludes that the BOP disciplinary proceedings satisfied the due process requirements of the Constitution and therefore denies Dillard's petition and his motion for a subpoena.

## BACKGROUND

1.     <u>Incident Report 2839002 dated April 14, 2016</u>

Dillard is presently incarcerated at the Federal Correctional Institution in Sandstone, Minnesota ("FCI-Sandstone") serving a 48-month sentence for possession of unregistered firearms and silencers and possession of stolen firearms.  Gyurke Decl. ¶ 7 and Ex. B (BOP computer printout), Docket Nos. 5, 5-2.  While incarcerated at the Federal Correctional Facility in Morgantown, West Virginia ("FCI-Morgantown"), Dillard wrote a letter to his wife, at his home address in Michigan, that included the following statements:

> This is my list of things I would like/need.  First, I would like a magazine sub[scription] to "Guns & Ammo."  I'm sending two mag. pages, one of a watch, I just want you to find out how much it is or one like it.  Second page is of a girl.  I want a pic of you like this . . . LOL . . .  Well my other list includes 7 pouches and the rest in Kayak "W.G." up to $70.00 for you know who, then $80.00 same[1] but mix for you also know who, and wrap them separate, plz, his all together in one.  Don't forget the other pics you have for me!  I can't wait for them. The only other thing I will need is a lil money on my account for the phone so I can keep calling, my mom or grandma will probably help with that if you ask them to.

Dillard Reply Br. ¶ 12, Docket No. 7; Gyurke Decl. Ex. D (photo of letter and envelope attached to incident report), Docket No. 5-4.  Kayak is a brand of smokeless tobacco commonly found as contraband at FCI-Morgantown, and "W.G." means wintergreen flavor of Kayak.  Gyurke Decl. ¶ 9, Docket No. 5.

Dillard put the letter in outgoing mail at FCI-Morgantown, where it was selected for review from the mail room.  Incident Report 2839002, Docket No. 5-4.  On April 14, 2016 a corrections officer read the letter and reported that it appeared to ask for multiple

---

[1]   In the handwritten letter, an arrow points from the word "same" to the word "Kayak."

2

items of contraband. *Id.* He stated that the references to "you know who" raise the possibility that such actions have happened in the past and the addressee is familiar with the procedure. *Id.*

An incident report was prepared and delivered to Dillard that same day listing two charges: Code 296 – Use of Mail for Abuses Other than Criminal Activity, specifically, writing a letter in code,[2] and Code 331A – Introduction of Non-hazardous Contraband (Attempt), specifically, tobacco.[3] *Id.* The BOP classifies Code 296 as a prohibited act of "High Severity" and Code 331A as "Moderate Severity." *See* BOP Program Statement 5270.09 *Inmate Discipline Program* (2011), Table 1 *Prohibited Acts and Available Sanctions,* at 48, 51, attached as Ex. A to Gyurke Decl., Docket No. 5-1.

The Unit Disciplinary Committee ("UDC") held an initial hearing on April 15, 2016. Gyurke Decl. ¶ 11 and Ex. D, Docket Nos. 5, 5-4. Dillard asserted that the reporting officer had misinterpreted his letter: "It is a misunderstanding. I have a farm and hired

---

[2]    Code 296 is: Use of the mail for abuses other than criminal activity which circumvent mail monitoring procedures (e.g., use of the mail to commit or further a High category prohibited act, special mail abuse; writing letters in code; directing others to send, sending, or receiving a letter or mail through unauthorized means; sending mail for other inmates without authorization; sending correspondence to a specific address with directions or intent to have the correspondence sent to an unauthorized person; and using a fictitious return address in an attempt to send or receive unauthorized correspondence). BOP Program Statement 5270.09, Table 1 at 48, Docket No. 5-1.

[3]    Code 331 is: Possession, manufacture, introduction, or loss of a non-hazardous tool, equipment, supplies, or other non-hazardous contraband (tools not likely to be used in an escape or escape attempt, or to serve as a weapon capable of doing serious bodily harm to others, or not hazardous to institutional security or personal safety) (other non-hazardous contraband includes such items as food, cosmetics, cleaning supplies, smoking apparatus and tobacco in any form where prohibited, and unauthorized nutritional/dietary supplements). BOP Program Statement 5270.09, Table 1 at 51, Docket No. 5-1. The letter "A" after a Code number means an "attempt" to commit the prohibited act.

hands that help on the farm.  I was telling my [wife][4] to get tobacco for them for helping

on the farm."  Incident Report 2839002, Part II, Gyurke Decl. Ex. A, Docket No. 5-4.

The UDC referred Incident Report 2839002 for further hearing by a Discipline Hearing

Officer ("DHO").  *Id.*

**2.**   **First DHO Hearing (DHO Tompkins) and Dillard's Appeal**

DHO T. Tompkins conducted a hearing on Incident Report 2839002 on May 18,

2016 and issued a report on May 27, 2016.  Gyurke Decl. ¶ 12 and Ex. G (DHO

Report), Docket Nos. 5, 5-7.  Two inmates appeared as witnesses for Dillard, one

stating that "Dillard does not smoke" and one stating "I know that he does have farm

hands that work for him."  *Id.* ¶ 13 and Ex. G.  The report summarized Dillard's

statement as, "I admit to talking in code. The tobacco was for my cousins for helping on

farm. I did not want my grandmother to know that I was providing tobacco for my

cousins who are under age."  *Id.*

DHO Tompkins found that Dillard committed the prohibited act of Code 296,

writing a letter in code.  *Id.* Ex. G.  He based his finding on the reporting officer's

description of the letter as stated in Incident Report 2839002 and on Dillard's

"admission that you were talking in code in an attempt to hide the fact that you were

attempting to supply tobacco to your cousins."  *Id.*  DHO Tompkins "expunged the

charge of 331A based upon lack of evidence that the items requested were in fact going

to be introduced to FCI Morgantown."  *Id.*  He imposed the following sanctions:  disallow

---

[4]  A UDC committee member wrote down Dillard's comments and referred to the addressee as Dillard's "girlfriend."  Dillard and BOP records identify and refer to the addressee as Dillard's wife and the Michigan address as Dillard's address of record. *See* Dillard Reply Br. ¶ 13, Docket No. 7; Gyurke Decl. ¶ 9, Docket No. 5.

27 days good conduct time; 30 days disciplinary segregation suspended for 180 days; and 90 days loss of commissary and email privileges.  *Id.*

On June 5, 2016 Dillard appealed DHO Tompkins' decision, requesting that the "sanctions be reversed and the Incident Report expunged."  Petition ¶ 7, Docket No. 1; Docket No. 1-1 at 5-7 (Regional Administrative Remedy Appeal). In response, the Regional Director "remand[ed] the incident report to the institution for a rehearing." Docket No. 1-1 at 8 (Sept. 13, 2016 Response).

### 3.    DHO Re-Hearing (DHO Gyurke)

On October 25, 2016 a copy of Incident Report 2839002 was re-delivered to Dillard.  Gyurke Decl. ¶ 17 and Ex. H, Docket Nos. 5, 5-8.  Dillard stated, "It was a misunderstanding.  I had no intentions of introducing contraband into the institution.  By using the terms 'you know who" I wasn't speaking in code.  I didn't expect my mail to be read from the camp, therefore I had no reason to speak in code."  *Id.* Ex. H, Docket No. 5-8.

On November 29, 2016 the UDC referred Incident Report 2839002 for further hearing by a DHO and gave Dillard a notice of his rights at the re-hearing.  *Id.* ¶ 18 and Exs. H, I (Inmate Rights at Discipline Hearing), Docket Nos. 5, 5-8, 5-9.  Dillard did not request a staff representative or any witnesses at his re-hearing.  *Id.* ¶ 18 and Ex. J, Docket Nos. 5, 5-10.  DHO Michael Gyurke Jr. held a hearing on December 5, 2016 and issued a report on December 22, 2016.  *Id.* ¶ 19 and Ex. K (DHO Report), Docket Nos. 5, 5-11.  The re-hearing took place at the Federal Correctional Institution in Ashland, Kentucky ("FCI-Ashland"), where Dillard had been transferred.  Dillard Reply Br. ¶ 2, Docket No. 7; DHO Report, Docket No. 5-11.  The DHO Report summarized Dillard's

statement as, "It's [the Incident Report] absolutely not true. I was talking about my cousins. I wasn't talking in code or trying to hav[e] anything introduced." DHO Report, Docket No. 5-11.

DHO Gyurke found that Dillard committed the prohibited act of Code 331A, attempted introduction of non-hazardous contraband/tobacco, and he dismissed the Code 296 charge of writing a letter in code. *Id.* The DHO based his decision on the text of the letter and the reporting officer's description of it in Incident Report 2839002. *Id.* He rejected Dillard's explanation that the tobacco was for relatives on his farm in Michigan, pointing out that the letter begins by saying it contains a list of things "I would like/need" and that the listed items are things to be sent to or obtained for Dillard – pictures, a magazine subscription, and then a reference to Kayak tobacco – again, with no mention of any relatives. *Id.* DHO Gyurke imposed the following sanctions: disallow 14 days good conduct time (reduced from previous sanction of 27 days); 30 days disciplinary segregation suspended for 180 days – sanction has since expired; and 90 days loss of commissary and email privileges – sanction has since expired. *Id.* Dillard's appeals of the decision were denied. Docket No. 1-1 at 12-15 (Dillard appeal; Mar. 16, 2017 and July 24, 2017 Responses denying appeal).

The parties agree, and the record shows, that Dillard has exhausted his administrative remedies under the BOP's administrative remedy program. *See* Petition ¶ 9, Docket No. 1; Docket No. 1-1 at 13-15 (July 24, 2017 BOP denial of appeal); Gov't Br. 9, Docket No. 4.

**ANALYSIS**

1.    **Petition Alleging Due Process Violations**

Dillard brings this habeas petition under 28 U.S.C. § 2241 to challenge the prison disciplinary proceedings that found him guilty of attempted introduction of contraband, which resulted in the loss of 14 days good conduct time.   He alleges that his due process rights were violated in the following ways: (1) at the re-hearing, it was improper for DHO Gyurke to consider the Code 331A charge because DHO Tompkins had expunged that charge in his decision following the first DHO hearing; (2) DHO Gyurke applied the wrong evidentiary standard; and (3) there is no evidence to support DHO Gyurke's finding of guilt on the 331A charge.   *See* Petition ¶¶ 8-9, Docket No. 1

The revocation of an inmate's good conduct time implicates a liberty interest that is protected by the Due Process Clause of the Constitution.   *Espinoza v. Peterson*, 283 F.3d 949, 951-52 (8th Cir. 2002).   When a prison disciplinary hearing may result in the loss of good conduct time, the inmate must receive: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action.   *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985) (citing *Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974)).

Due process also requires that "some evidence" support the decision to revoke good conduct time.   *Id.* at 455.   Ascertaining whether this standard is satisfied "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence."   *Id.*   Instead, the "relevant question is whether

7

there is any evidence in the record that could support the conclusion reached" in the disciplinary proceeding. *Id.* at 455-56. Federal courts are not part of the appellate process for prison disciplinary proceedings, *Toombs v. Hicks*, 773 F.2d 995, 997 (8th Cir. 1985), and courts should not intercede in prison discipline cases unless the sanction is "wholly unsupported by the record," *Gomez v. Graves*, 323 F.3d 610, 613 (8th Cir. 2003).

The record establishes that the disciplinary proceedings and re-hearing of Incident Report 2839002 satisfied the Constitution's due process requirements. Dillard received advance written notice of the Code 296 and Code 331A charges against him when he twice received a copy of the incident report – first on April 14, 2016 before the original investigation and hearing before DHO Tompkins, and again on October 25, 2016 following his appeal when the Regional Director remanded the incident report for a re-hearing. *See* Gyurke Decl. Exs. D, H, Docket Nos. 5-4, 5-8. On November 29, 2016 he received notice of his rights at the re-hearing and signed the form indicating he did not request the presence of a staff representative or witnesses. *See* Exs. I (Inmate Rights at Discipline Hearing) and J (signed form), Docket Nos. 5-9, 5-10. He had the opportunity to present evidence and arguments at the re-hearing, as summarized in DHO Gyurke*'s* report following the re-hearing.[5] *See* Ex. K (DHO Report), Docket No. 5-11. He received a copy of DHO Gyurke's December 22, 2016 report that states the

_____

[5] Although Dillard argues in his reply brief that he did not have an opportunity to submit documentary evidence or to make as many oral arguments as he wanted, he did not raise those issues in his habeas petition and they are therefore waived. These reply brief arguments are discussed below in the section that addresses Dillard's motion for subpoena.

evidence he relied on and the reasons he concluded Dillard was guilty of the Code 331A charge and imposed sanctions. *Id.*

The record also shows that "some evidence" supports the finding that Dillard committed the Code 331A prohibited act of attempted introduction of contraband. DHO Gyurke relied on the text of Dillard's letter requesting that certain items be sent to him, and the statements of the reporting officer about the references to Kayak smokeless tobacco and "you know who." *See id.* The DHO considered Dillard's explanation of the statements in his letter, but gave "the greater weight of the evidence to the written report" that interpreted the contents of the letter. *Id.*

Dillard alleges that DHO Gyurke applied "the wrong evidentiary standard," but his petition does not explain or identify what the "correct" standard should be. Petition ¶¶ 8-9, Docket No. 1. In his reply brief, Dillard explains his argument as follows: DHO Tompkins found him not guilty of Code 331A "based on a lack of evidence"; no new evidence arose between the time of the first hearing by DHO Tompkins and the re-hearing by DHO Gyurke; DHO Gyurke found him guilty of Code 331 "despite no new evidence"; therefore, DHO Gyurke improperly "presumed" Dillard was guilty and "expected Dillard to prove his innocence rather than using the evidence (or lack thereof) to prove [his] guilt. This is the wrong evidentiary standard." Dillard Reply Br. ¶¶ 14-16, Docket No. 7. The Court disagrees with Dillard's characterization of the burden of proof and the evidence in his disciplinary proceedings. The record here is clear that "some evidence" exists to support DHO Gyurke's finding of guilt, and under the governing law, that ends the Court's inquiry. *See Hill*, 472 U.S. at 455.

9

Dillard also argues that, because DHO Tompkins "expunged" the Code 331A charge at the first DHO hearing, it was improper to "re-introduce" that charge when the Regional Director remanded Incident Report 2839002 for a re-hearing in response to Dillard's appeal. *See* Petition ¶ 8, Docket No. 1. Dillard cites no authority to support this contention, which is essentially a "double jeopardy" argument. The Double Jeopardy Clause of the Constitution does not apply to prison disciplinary proceedings and sanctions, because they are not criminal in nature. *See Wolff*, 418 U.S. at 556; *Jones v. Jett*, No. 10-cv-4201, 2011 WL 5507222, at *3 (D. Minn. Aug. 12, 2011) ("Double Jeopardy Clause is not implicated in the application of prison disciplinary sanctions, or the fact of rehearing, because such matters are not criminal in nature"), *report and recommendation adopted*, 2011 WL 5408009 (D. Minn. Nov. 8, 2011), *aff'd*, 470 F. App'x 522 (8th Cir. 2012) (unpublished) (per curiam).

After the first  DHO hearing, DHO Tompkins issued a report in which he found Dillard guilty of Code 296 (writing a letter in code), dismissed Code 331A (attempted introduction of contraband) for "lack of evidence," and imposed a sanction that included disallowing 27 days good conduct time. *See* Ex. G (May 27, 2016 DHO Report), Docket No. 5-7. Dillard appealed, and the Regional Director "remand[ed] the incident report to the institution for a rehearing." Docket No. 1-1 at 8 (Sept. 13, 2016 response to appeal). At that point, the disciplinary proceedings to adjudicate Incident Report 2839002 started all over again with re-delivery of the incident report to Dillard, re-investigation/consideration by the UDC, referral by the UDC for a re-hearing by a DHO, another notice to Dillard of his rights at the disciplinary hearing, and then the re-hearing itself. At each step in the process, the documents are clear that the re-hearing will

adjudicate the entire Incident Report 2839002 regarding Dillard's letter, including both the Code 296 and Code 331A charges.

After the re-hearing, DHO Gyurke made findings that were the opposite of DHO Tompkins' findings and imposed a lesser sanction regarding the loss of good conduct time. He found Dillard guilty of the less serious Code 331A charge (a "Moderate Severity" act), dismissed the Code 296 charge (a "High Severity" act), and disallowed 14 days good conduct time rather than the 27 days that DHO Tompkins had imposed. as a sanction. *See* Ex. K (Dec. 22, 2016 DHO Report), Docket No. 5-11. Thus, the outcome of the re-hearing was more favorable to Dillard with respect to the loss of good conduct time. Yet Dillard seems to suggest that, in essence, because DHO Tompkins dismissed the Code 331A charge and DHO Gyurke dismissed the Code 296 charge, when you add those two dismissals together there is no longer any basis or any evidence to support a finding of guilt on either charge in Incident Report 2839002. There is no support for Dillard's suggestion that DHO Gyurke was bound by DHO Tompkins' earlier dismissal of the Code 331A charge. As stated above, the Double Jeopardy Clause does not apply, and the Due Process Clause is satisfied. Therefore, the Court denies Dillard's petition for habeas relief.

2.    **Motion for Subpoena of Video and Audio Recordings**

Dillard also brought a motion requesting a subpoena for the video and audio recordings of his December 5, 2016 DHO Re-Hearing at FCI-Ashland, along with the security video footage of him being taken into the video conference room. *See* Motion, Docket No. 8; Dillard Reply Br. ¶ 1, Docket No. 7. He claims that these recordings are

"the key element to [Dillard] being able to provide his claims." Motion, Docket No. 8. The Government did not respond to the motion.

The Court finds that the video and audio recordings would shed little or no light on the grounds for relief raised in Dillard's habeas petition, namely, the correct evidentiary standard, the sufficiency of the evidence to support a finding of guilt, and whether it was proper for DHO Gyurke to consider the Code 331A charge in the re-hearing after remand, given that DHO Tompkins had dismissed it in the original hearing before Dillard appealed. *See* Petition ¶¶ 8-9, Docket No. 1. DHO Gyurke based his finding on the text of Dillard's letter and the reporting officer's statements about the letter, and he rejected Dillard's explanation because, in his view, the greater weight of the evidence supported a finding of guilt. *See* Gyurke Decl. ¶¶ 22-24 and Ex. K (DHO Report), Docket Nos. 5, 5-11. Video and audio recordings would have no effect on those issues and evidence.

Instead, it appears that Dillard's motion is based on grounds he did not raise in his habeas petition, specifically, that he was denied the opportunity to present documentary evidence and to make oral arguments in his defense, and that DHO Gyurke was not an impartial hearing officer. *See* Dillard Reply Br. ¶¶ 6-7, 17-18, Docket No. 7. These grounds do not appear anywhere in his petition, and he did not file a brief to support his petition. He did, however, file a reply brief to the Government's Response in which he alleges that guards outside the conference room took away his documentary evidence, but he does not identify what document was taken from him or

how it would impact his defense.[6]  *See id.* ¶¶ 6-7, 10.  His reply brief also asserts that DHO Gyurke made statements, threats and/or was otherwise not impartial because he was colleagues and friends with staff members against whom Dillard had filed complaints.  *See id.* ¶¶ 7, 10, 17.  Dillard apparently wants to obtain the video and audio recordings in order to show the account document being taken from him and to hear DHO Gyurke make the statements that Dillard attributes to him in his reply brief.  Again, however, Dillard did not raise these grounds in his petition and did not file a brief in support of his petition. Therefore, the Government did not have an opportunity to respond to them, and this Court is not in a position to consider them.  Any additional claims of due process violations not presented in Dillard's habeas petition are now waived. *See Davis v. Grandlienard*, No. 13-cv-2449, 2015 WL 1522186, at *28 n.17 (D. Minn. Mar. 31, 2015) (citing *Sedillo v. Hatch*, 445 F3d. App'x 95, 1091 (10th Cir. 2011) ("Theories or claims not raised in a habeas petition are ordinarily deemed waived.")), *aff'd*, 828 F.3d 658 (8th Cir. 2016).  Accordingly, Dillard's motion for a subpoena of video and audio recordings is denied.

---

[6]  Dillard's prison administrative appeal refers to a financial account document that he said showed that he had adequate money in his prison account and therefore he "had no reason to introduce tobacco products because I don't use them and I did not need money, which is the reason most inmates would introduce contraband."  *See* Docket No. 1-1 at 15 (Apr. 10, 2017 administrative appeal ¶ 3). Dillard contends that, "if allowed to present this, it would have had an effect on the outcome." *Id.* However, Dillard's appeal shows that he did in fact make this argument to DHO Gyurke, even without the particular document he says was taken from him. According to Dillard, DHO Gyurke's response to his argument was to point out that Dillard specifically requested money in his letter: "The only other thing I will need is a lil money on my account for the phone . . . ." *Id.* Given DHO Gyurke's reliance on the text of the letter, including Dillard's specific request to his wife to send money, it does not seem that if DHO Gyurke had seen a document showing the amount in Dillard's account, it would have changed the outcome of DHO Gyurke's finding of guilt.

**ORDER**

For the reasons set forth above, IT IS ORDERED THAT Scott Lynn Dillard's

Motion for Subpoena of DHO Hearing Video and Audio [Docket No. 8] is DENIED.

**RECOMMENDATION**

For the reasons set forth above, IT IS RECOMMENDED THAT:

1.    Scott Lynn Dillard's Petition for a Writ of Habeas Corpus [Docket No. 1] be

DENIED.

2.    This action be DISMISSED WITH PREJUDICE.

Dated:        August 16, 2018


                                        *s/ David T. Schultz*
                                        DAVID T. SCHULTZ
                                        United States Magistrate Judge


**NOTICE**

**Filing Objections:**  This Report and Recommendation is not an order or judgment of
the District Court and is therefore not appealable directly to the Eighth Circuit Court of
Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a
magistrate judge's proposed finding and recommendations within 14 days after being
served a copy" of the Report and Recommendation.  A party may respond to those
objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2).  All
objections and responses must comply with the word or line limits set for in LR 72.2(c).